

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

AMERICAN GREETINGS CORPORATION,
an Ohio corporation,

and

THOSE CHARACTERS FROM
CLEVELAND, INC.,
an Ohio corporation,

                Plaintiffs,

   vs.

DOLLAR GENERAL CORPORATION,
a Tennessee corporation,

and

HUGFUN INTERNATIONAL, INC.,
a California corporation,

                Defendants.

CASE NO. **1:03CV1755**

JUDGE **JUDGE WELLS**

**VERIFIED COMPLAINT**

**MAG. JUDGE HEMANN**

Plaintiffs American Greetings Corporation and Those Characters From Cleveland,

Inc. (hereinafter collectively referred to as "Plaintiffs" or "American Greetings"), by and through

their attorneys, for their complaint against defendants, Dollar General Corporation and Hugfun International, Inc. (hereinafter collectively referred to as "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      In this action, Plaintiffs seek injunctive and monetary relief for acts of copyright infringement under the laws of the United States, Title 17, United States Code (hereinafter the "Copyright Law"); for trade dress infringement, unfair competition, false designation of origin, false description, and dilution under the laws of the United States, Title 15, United States Code (hereinafter the "Lanham Act"); and for acts of unfair competition, dilution and unfair and deceptive trade practices under applicable Ohio law.

## PARTIES AND JURISDICTION

2.      Plaintiff American Greetings Corporation ("American Greetings") is an Ohio corporation with its principal place of business at One American Road, Cleveland, Ohio 44144.

3.      Plaintiff Those Characters From Cleveland, Inc. ("TCFC") is an Ohio corporation with its principal place of business at One American Road, Cleveland, Ohio 44144.

4.      Upon information and belief, defendant Hugfun International, Inc. ("Hugfun") is a California corporation with its principal place of business at 1250 Bixby Dr., City of Industry, California 91745.

5.      Upon information and belief, defendant Dollar General Corporation ("Dollar General") is a Tennessee corporation with its principal place of business at 100 Mission Ridge, Goodlettsville, Tennessee 37072.

6.      This action arises under Title 17 of the United States Code relating to copyrights; Title 15 of the United States Code relating to trade dress, unfair competition, false designation of origin, and federal dilution; and the statutory and common law of the State of Ohio. This court

2

has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367, and under 15 U.S.C. § 1121. This Court has jurisdiction over the state claims pursuant to 28 U.S.C. §§ 1332, 1338(b) and 1367(a), and the doctrine of pendent jurisdiction. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(a).

## FACTS RELEVANT TO ALL CLAIMS

### The Development of the Famous Care Bears Toy Line

7.      Plaintiff American Greetings is a leading publisher of greeting cards, and is actively engaged in the business of creating, acquiring and exploiting rights in and to original designs and artwork and incorporating such designs and artwork in greeting cards, printed publications and a wide-range of related products. American Greetings also licenses and supervises the production and marketing by third parties of commercial products embodying or derived from such designs and artwork.

8.      In 1981, American Greetings and CPG Products Corp. ("CPG") jointly commenced development of the Care Bears toy line.[1] This project was based on an original and different visual adaptation of the much loved teddy bear concept combined with an innovative marketing theme which together were intended to set these bears apart from other characters in the marketplace.

9.      The Care Bears toy line originally consisted of ten characters, and the family has been extended to include a number of other bears which together comprise the family of "Care Bears." Each bear has an individual name such as "Cheer Bear," "Tenderheart Bear," "Funshine Bear," "Wish Bear," and "Birthday Bear." (Copies of photographs depicting representative Care

---

[1] CPG and its successor-in-interest, Kenner Parker Toys, Inc., subsequently assigned all of their rights in and to Care Bears, including copyright rights, to American Greetings, which in turn has assigned all such rights to its subsidiary and co-plaintiff in this action, Those Characters From Cleveland, Inc. Copies of the aforementioned assignments are attached hereto and incorporated herein as Composite Exhibit A.

3

Bears and promotional materials displaying Care Bears are attached hereto and incorporated herein as Exhibits B and C respectively.)

10.     All Care Bears in the Care Bears toy line possess the same overall characteristics which serve to make the Care Bears plush toys readily distinguishable from other teddy bears. For instance, each Care Bear has a pear-shaped head that is disproportionately large to its body size. The bears have overstuffed jowls. They are tufted in a series of pastel hues, in low-pile plush. The ears, paws, snout, and tummy are inset with white plush. The tummy of each Care Bear displays a "tummy graphic," which is positioned on an oval-domed shaped abdominal area. The eyes are painted and the positioning is on the snout. The mouth is uplifting and smiling. The Care Bears have a small tail. They have tufts of hair and heart-shaped noses. The Care Bears have short legs enabling the bears to sit. In sum, the overall appearance and design of the Care Bears toy line (the "Care Bears Trade Dress"), is original, inherently distinctive, and nonfunctional--as described above and depicted in Exhibit B.

11.     TCFC owns the copyright registrations in the artwork in each of the Care Bears in their two and three-dimensional forms (hereinafter the "Care Bears Copyrighted Material"). (Copies of relevant copyright registrations are attached hereto and incorporated herein as Exhibit D). The names of each of the Care Bears are federally registered trademarks with the United States Patent and Trademark Office, and include Birthday Bear®, Cheer Bear®, Wish Bear®, Friend Bear®, Bedtime Bear®, Funshine Bear®, and Share Bear®.

**The Initial Launch Of The Care Bears Toy Line**

12.     In the early 1980s, character licensing was booming. The Care Bears line was one of the most successful licensing efforts of that time. The line developed a widespread and large following of consumers, resulting in a high degree of consumer recognition of the Care

4

Bears name and bear designs. The distinctiveness of the bears coupled with their enormous popularity created very strong trademark rights.

13. American Greetings embarked on a costly and time consuming effort to pave the way for a wide scale merchandising plan involving hundreds of products of all kinds which would feature or be based upon the Care Bears.

14. The Care Bears toy line, including plush toy bears, was formally introduced in February 1983 at the American Toy Fair. The Care Bears toy line was among the most popular toy lines offered in the 1980s, grossing $1.5 billion from 1983 to 1987. The book *Toys: Celebrating 100 Years of the Power of Play*, written by Chris Byrne and published by the Toy Industry Association, Inc. in 2003, outlines what made the Care Bears so great:

> Their sweetness struck a chord, and the U.S.—and the world—went mad for the Care Bears ... Care Bears were a mass-market phenomenon that touched people of all ages. There was practically a bear for every occasion you could think of ... And in the very '80s spirit of gender neutrality, the Care Bears appealed to many boys as well.

## The Highly Successful Re-Launch of the Famous Care Bears Toy Line

15. It is typical for character properties to go through cycles of popularity. After peaking in or around 1987, the Care Bears merchandise continued to be sold, but not at the same levels. Approximately four years ago, company officials and creative directors at American Greetings met to begin developing a strategy to reintroduce the Care Bears family and other highly successful American Greetings properties, such as Strawberry Shortcake and Holly Hobbie. The reintroduction of the Care Bears line was bound to be successful given the well-established reputation of the property from the 1980s and the phenomenal success the line previously enjoyed.

5

16.     American Greetings' carefully-crafted re-launch strategy included consumer research, product updates, and a systematic licensing plan to include licensees who have a strong marketing presence in both the merchandising and entertainment arenas.

17.     The re-launch of Care Bears--which was geared to the pre-teens, teens, and young adults--began in January of 2001. It included the introduction of Care Bears t-shirts, hats, and the like in the gift and specialty channel which includes such stores as Hot Topic. The classic-looking plush Care Bears were re-introduced around January 2002.

18.     On July 12, 2002, Cleveland Mayor Jane Campell issued a Proclamation designating that day as CARE BEARS Day in the City of Cleveland. In her words, she invited all citizens to join her "… in supporting American Greetings as they celebrate the return of the Care Bears and introduce these lovable characters to a new generation of fans."

19.     Through June 2003, retail sales of Care Bears products had already reached $115 million. Through April 2003, 8 million plush Care Bears had been shipped for sale.

20.     As expected, the Care Bears have had overwhelming success to date. They have been an exceptionally successful consumer products brand throughout the United States and the world. Indeed, in April 2003, the Care Bears were voted best pre-school Toy of the Year at the Australian Toy Fair. In June 2003, the Care Bears plush line from master toy licensee for Care Bears, Play Along Inc., was named the Best Character License of the Year at the 19th annual LIMA International Excellence Awards Gala held in New York City. (LIMA is the acronym utilized by the Licensing Industry Merchandisers Association, the worldwide trade association for the licensing industry which sponsors regional, national and international events.) In short, the Care Bears have gained, and are continuing to gain, widespread recognition, popularity, and interest.

21.    Care Bears enjoy a multi-generational customer base. This multi-generational audience consists of grandmothers of today (i.e., the moms of yesterday), the mothers of today (i.e., the children of yesterday), and the children of today (i.e., a new generation of uninitiated children). Thus, the target customers for Care Bears plush toys are young parents and kids ages 3-7, but also teens and young adults.

22.    As of June 2003, there were over 160 Care Bears' licensees around the world (60 percent of them domestic). The licensees cover all major categories: toys, publishing, apparel, home décor and accessories.

23.    Projected retail sales for 2003 of Care Bears merchandise is $250 million.

24.    The Care Bears comeback was very successful and by June 2003 it was clear to American Greetings that large numbers of consumers from the 1980s who knew and loved the Care Bears were now again purchasing the products and interested in the brand. This became particularly clear when it was announced that the Care Bears would appear in an upcoming issue of *Tiger Beat* magazine. This coverage was on the heels of articles in, among others, *The Wall Street Journal* (see "Care Bears' Second Act," June 11, 2003), *The Beacon Journal* (see "Sweet toys of '80s return," May 03, 2003), and ), *U.S. News & World Report* (see "An '80s deluge," May 20, 2002). In the July 2003 edition of *The Toy Book*, a popular toy industry trade magazine, the "Care Bears Assortment" was ranked #3 on the "What's Hot" list for tv-promoted toys, next only to Beyblade Tops (#1) and Teenage Mutant Ninja Turtles Figures (#2).

25.    In addition to the widespread attention in the mass media press, the Care Bears have been or are scheduled to be featured in industry publications as well. Licensing Book included a full-page story on Care Bears in its June issue. Playthings included Care Bears in the

"Softer Side of Toys" section of its June issue. Brand Week will include Care Bears in a story regarding properties that have dual appeal--one for kids and one for teens.

26.     Care Bears plush are the best-selling toys at Wal-Mart for Spring 2003. According to the Toy Industry Association, the Care Bears plush is the top-selling plush for the first quarter of 2003.

27.     Finally, in addition to the line of toys, apparel, games, bedding, books, CDs, and the like, some old Care Bears cartoons will be re-packaged for sale, and some new Care Bears entertainment is currently in development and production. During the initial Care Bears launch, three forms of Care Bears animated entertainment were offered, including: (i) three Care Bears theatrical releases; (ii) a Care Bears television series that ran for two seasons on ABC (the series subsequently went into syndication); and (iii) Care Bears home movies. Currently, a Care Bears direct-to-home entertainment piece (DVD/VHS) is scheduled for nationwide release in October 2004. These programs, videos and movies reinforce and strengthen consumer recognition of the Care Bears family of products, including plush.

28.     American Greetings' marketing campaign requires careful coordination using traditional media outlets as well as the Internet (such as www.care-bears.com). American Greetings estimates that it invested over $25 million in advertising for the original Care Bears, and will invest an additional $15 to $20 million for advertising, consumer products, and corresponding development for the re-launch of this property. One licensee alone has committed to more than $5 million for advertising Care Bears toys over television in the United States for 2003. This licensee did $4 million in advertising in 2002.

8

29.     The Care Bears name is still well recognized due to home video ownership and rentals. Recent independent research showed an 88% overall character awareness among women, as reported by Bruskin Research in April 2001.

30.     American Greetings has taken great care to ensure that all licensed products meet with its high standards of quality and uniform aesthetic appeal. All licensees are carefully selected and work closely with American Greetings on an ongoing basis in the development of products, packaging, advertising and promotion. Indeed, American Greetings has instituted strict quality control standards for the Care Bears program. American Greetings has sole and complete control over product design approval for all licensed goods. Final approvals by American Greetings' Cleveland-based creative department are required prior to manufacturing and distribution. This quality control process is a strict requirement under the Care Bears licensing program.

31.     American Greetings made a conscious marketing and business decision to not distribute the Care Bears through the deep discounters, including the "dollar store channel" where very inexpensive items are sold. This is standard for high-profile licensed merchandise. Sales through dollar stores tend to degrade the value and good will of a high profile property (in part through their pricing structure). Customers at those stores may believe that the items for sale are factory seconds or otherwise original branded product. This is sometimes the case; however, many times the goods sold at dollar stores are cheap imitations of the original branded characters.

## The Infringing Bears Made by Hugfun for Dollar General

32.     Upon information and belief, Hugfun has created a line of knock-off Care Bears for Dollar General, which includes six different bears (hereinafter referred to as "Defendants'

9

Infringing Care Bears"). (Copies of photographs depicting Defendants' Infringing Care Bears are attached hereto and incorporated herein as Exhibit E.)

33.     On or about July 14, 2003, while in a Dollar General store in Brooklyn, Ohio, Jeff Weiss, President and Chief Operating Officer of American Greetings Corporation, came across several of Defendants' Infringing Care Bears. Mr. Weiss immediately recognized Defendants' Infringing Bears as being copies of Plaintiffs' Care Bears, and purchased three of the bears for further review and consultation with the American Greetings legal department.

34.     On or about July 22, 2003, while in a Dollar General store in Columbus, Ohio, Bill Dewitt--the Vice President of the Specialty Channel of American Greetings Corporation (the parent company of Those Characters From Cleveland, Inc.)--came across several of Defendants' Infringing Care Bears. Mr. Dewitt immediately consulted others within American Greetings, including members of its legal department, regarding the infringing bears.

35.     Mr. Dewitt again came across several of Defendants' Infringing Care Bears on or about August 7, 2003, while in a Dollar General store in Norfolk, Virginia.

36.     American Greetings has expected that there would be unlawful knock-offs of the Care Bears, just as there had been in the 1980s. The copying by Defendants here is not inadvertent. Defendants did not simply make one plush pastel bear. Instead, they created a line of 6 pastel plush bears that look amazingly like the Care Bears family of pastel plush bears. These bears are confusingly and substantially similar to Plaintiffs' Care Bears in many ways, including the construction, size, overall shape, color, facial features, tummy graphics, and overall look and feel.

37.     Specifically, Defendants' Infringing Care Bears are the same colors as Plaintiffs' Care Bears: pastel pink, yellow, blue, green, and purple; with white inserts in the ears, for the

10

snout, paw pads and tummy. Defendants' bears utilize similar, but inferior, plush fabric. Both lines of bears possess sewn on, "in-set" tummies. Defendants' Infringing Care Bears also have the same graphics as Plaintiffs' Care Bears: a birthday bear has a birthday cupcake or cake with a candle, just like American Greetings' Birthday Bear®. Another bear combines the bright rainbow from the Care Bears Cheer Bear® with the smiley-faced star copied from Care Bears' Wish Bear®. (Copies of photographs displaying Plaintiffs' Care Bears next to Defendants' Infringing Care Bears are attached hereto and incorporated herein as Exhibit F.)

38.     Furthermore, Defendants' Infringing Care Bears are virtually the same size, proportion and shape as Plaintiffs' Care Bears. The heads are the same pear shape, with overstuffed "jowls." The imitation bears and Plaintiffs' Care Bears have virtually identical eyes, complete with lashes and colored irises. Both lines of plush bears have uplifting, smiling faces, similar "pull stitching" in the mouth area, indentations at the base of the mouth, and heart-shaped noses. Both lines of bears have "arms" and "legs" of the same shape and in the same position. They both have tails--which many plush bears do not have. Finally, both lines of bears are designed to sit upright

39.     These striking similarities are not coincidental. Defendants have slavishly copied the Care Bears Trade Dress and the Care Bears Copyrighted Material. Defendants have exhibited a clear course of conduct to copy the Care Bears line and to appropriate the good will and reputation associated with it. Defendants are merely riding the shirttails of the Care Bears resurgence at a price which is so low that it creates irreparable harm to the Care Bears line. The timing of the launch of these infringements to coincide with American Greetings' re-launch of the Care Bears after 20 years shows the clear intent of Defendants to compete unfairly.

11

40.     Plaintiffs' Care Bears plush toys sell for around $12.99 to $14.99 at retail for a 13-inch plush toy.  Plaintiffs also sell other sizes of plush, including a 32-inch for around $40.00. In contrast, Dollar General's imitation bears sell for $3.50.  Obviously, Dollar General does not carry the kind of overhead that American Greetings and its licensees do for investing in, building and reinforcing the Care Bears brand (including advertising dollars).  Rather, Dollar General and Hugfun merely trade off and appropriate the 20 years of good will that Plaintiffs have established in the Care Bears character property and the recent resurgence of the Care Bears line.

41.     Given that many of Plaintiffs' customers are young children or teens, purchasers often are not very sophisticated and could be duped into believing the pastel plush toys with tummy graphics sold by Dollar General are Care Bears or are somehow related to Plaintiffs' Care Bears.

42.     Defendants' Infringing Care Bears are likely to cause consumer confusion in the marketplace that those bears are somehow associated with or licensed by Plaintiffs.

## The Infringements Are Causing Irreparable Harm

43.     Plaintiffs will suffer irreparable harm if Defendants' Infringing Care Bears continue to be sold in the marketplace.  No amount of money could compensate Plaintiffs for the harm to the reputation and good will associated with the high-quality Care Bears line of plush toys.

44.     Upon information and belief, Dollar General operates more than 6,000 stores in 27 states.  Accordingly, it is likely that there is a very large quantity of Defendants' Infringing Care Bears in circulation throughout the United States.

45.     Plaintiffs have no control over the quality of Defendants' Infringing Care Bears. Because plush toys such as teddy bears are geared to children, the toys must meet stringent

safety tests, like the "pull-test" for eyes and any other parts that present a choking hazard. In addition, the stuffing for the bears must meet certain requirements to make sure that the bears are not flammable. Plaintiffs simply do not know what steps defendant Hugfun has taken, if any, to deal with these safety risks. Accordingly, the reputation and good will Plaintiffs have developed in the Care Bears family of toys is in jeopardy, as is the safety of children.

46.     In addition to the quality and safety issues, the sale of the imitation plush through the Dollar General stores injures Plaintiffs' integrity in the marketplace, as well as Plaintiffs' reputation with its valuable retail customers who rightly expect that American Greetings will not sell Care Bears or permit the sale of imitations through the dollar store channel. Because of price point, the marketing strategy for Care Bears excludes sales through the dollar store channel.

47.     Placement of high quality licensed brands into the dollar store channel usually signifies the end of the life of the brand. Some brands never even enter the dollar store channel at the end of their life because it diminishes their ability to make a comeback. With regard to the Care Bears re-launch in the early stages, the placement of the Hugfun bears in Dollar General stores sends mixed signals to the marketplace, thereby causing confusion. It is important in this stage of the re-launch to keep the Care Bears plush outside of the dollar store channel.

48.     Any injury to the reputation and good will of the Care Bears plush will have a domino effect. Sales of the other Care Bears merchandise (e.g., apparel, educational products, etc.) will be impacted by such an injury because the sale of that merchandise depends on the success of the plush.

49.     Of course, the sales of the infringements make Plaintiffs' famous Care Bears brand less distinctive, which also causes irreparable harm.

50.     Given the apparent wide-spread distribution of Defendants' Infringing Care Bears, immediately recalling them from distribution is vital to protect the Care Bears property and to avoid confusion in the marketplace.

51.     The Christmas holiday is the peak sales period for the sale of Care Bears plush toys.  Generally, stores such as Dollar General order plush toys for the upcoming 2003 holiday season by late summer/early fall.  Thus, now is the time to stop the continued manufacture and distribution of Defendants' Infringing Care Bears.

<h3 style="text-align:center">COUNT I</h3>
<h3 style="text-align:center">Copyright Infringement</h3>

52.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs, as if set forth fully herein.

53.     Plaintiff TCFC has been and still is the holder of all exclusive rights under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and all amendments thereto, to reproduce, distribute, and otherwise exploit the Care Bears Copyrighted Material throughout the United States and the world.

54.     Upon information and belief, Defendants have copied, and continue to copy, the Care Bears Copyrighted Material, and Defendants' Infringing Care Bears are substantially similar to Plaintiffs' Care Bears.

55.     Upon information and belief, Defendants' Infringing Care Bears were and are distributed in interstate commerce.

56.     The manufacturing, advertising, selling and distribution of Defendants' Infringing Care Bears constitutes unauthorized reproduction and distribution of the Care Bears Copyrighted Material.

57.     Upon information and belief, Defendants' infringement of the Care Bears Copyrighted Material has been and continues to be carried out with Defendants' full knowledge that such elements are protected by copyright, and that in doing the acts complained of, Defendants have willfully and intentionally infringed TCFC's copyright in and to the Care Bears Copyrighted Material.

58.     Plaintiff TCFC is without remedy at law, in that damages are extremely difficult to ascertain.

59.     Plaintiff TCFC has sustained damages as a result of Defendants' wrongful acts as alleged herein. TCFC is presently unable to ascertain the full extent of the money damages it has suffered by reason of said acts of copyright infringement.

60.     Upon information and belief, Defendants have obtained gains, profits and advantages as a result of its infringing acts as alleged herein. Plaintiff TCFC is presently unable to ascertain the full extent of gains, profits and advantages Defendants have obtained by reason of their respective acts of copyright infringement.

61.     TCFC has suffered and continues to suffer irreparable harm and injury as a result of the aforesaid infringing acts of Defendants, and will continue to do so unless Defendants are preliminarily and permanently restrained and enjoined by the Court from further violation of TCFC's copyright rights.

**COUNT II**

**Federal Unfair Competition and Infringement of**
**Trade Dress in Violation of Federal Law**

62.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs, as if set forth fully herein.

63.     This claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. §
1051, *et seq.*, particularly under 15 U.S.C. § 1125(a). As detailed more fully above, the Care
Bears Trade Dress is inherently distinctive, has acquired secondary meaning and is non-
functional, and thus is entitled to protection under 15 U.S.C. § 1125(a). Moreover, the Care
Bears plush consists of an entire family of pastel bears featuring various identifying tummy
graphics.

64.     Defendants' copying of the Care Bears Trade Dress, and their creation and launch
of an entire family of pastel plush bears featuring the same identifying tummy graphics,
constitutes infringement of the Care Bears Trade Dress and unfair competition. As detailed
above, this was calculated, intended to cause, and is likely to cause confusion and mistake and to
deceive purchasers as to the source of origin or sponsorship of Defendants' goods in that the
public is likely to believe that Defendants' Infringing Care Bears emanate from, are sponsored or
licensed by, or are in some other way connected and/or associated with Plaintiffs, all in violation
of 15 U.S.C. § 1125(a).

65.     The acts of Defendants complained of herein constitute an attempt to trade on the
goodwill that Plaintiffs have developed in connection with the Care Bears family of plush bears,
to the detriment of Plaintiffs.

66.     Plaintiffs are without an adequate remedy at law, in that damages are extremely
difficult to ascertain.

67.     As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will
continue to suffer irreparable harm in the form of damage and injury to their business, reputation
and goodwill, and have sustained serious loss of revenues and profits, and will continue to do so

unless and until Defendants are preliminarily and permanently restrained and enjoined by the Court from further violating Plaintiffs' rights.

**COUNT III**

**False Designation of Origin and False
Description in Violation of Federal Law**

68.      Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs, as if set forth fully herein.

69.      Plaintiffs' Care Bears Trade Dress and Care Bears Copyrighted Material are individually distinctive, have been used throughout the United States and worldwide, and are well known to the trade and members of the purchasing public. The public generally associates and identifies Plaintiffs' Care Bears Trade Dress and Care Bears Copyrighted Material with Plaintiffs.

70.      Defendants' conduct in the manufacture, distribution, advertising, sale, offering for sale, and/or other use of Defendants' Infringing Care Bears bearing Plaintiffs' Care Bears Trade Dress and Care Bears Copyrighted Material constitutes false designation of origin or sponsorship of said products and tends falsely to represent that Defendants' Infringing Care Bears originate from Plaintiffs or that Defendants' Infringing Care Bears and/or Defendants have been sponsored, approved, or licensed by Plaintiffs, or are in some way affiliated or connected with Plaintiffs. Such conduct of Defendants is likely to confuse, mislead and deceive Defendants' customers, purchasers, and members of the public as to the origin Defendants' Infringing Care Bears or cause said persons to believe that those products and/or Defendants have been sponsored, approved, authorized, or licensed by Plaintiffs or are in some way affiliated or connected with Plaintiffs, all in violation of 15 U.S.C. § 1125(a).

17

71.     Upon information and belief, Defendants' actions were done willfully with full knowledge of the falsity of such designations of origin and false description or representations, and with the express intent to cause confusion, and to mislead and deceive the purchasing public.

72.     Plaintiffs are without an adequate remedy at law, in that damages are extremely difficult to ascertain.

73.     As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and have sustained serious loss of revenues and profits, and will continue to do so unless and until Defendants are preliminarily and permanently restrained and enjoined by the Court from further violating Plaintiffs' rights.

## COUNT IV
### Dilution in Violation of Federal Law

74.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs, as if set forth fully herein.

75.     This claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, particularly under 15 U.S.C. § 1125(c).

76.     Plaintiffs' Care Bears Trade Dress is distinctive and famous; has been in use for nearly 20 years throughout the United States and worldwide; has been advertised for nearly 20 years throughout the United States and worldwide; and is well known to the trade and to members of the consuming public.  The public generally associates and identifies the Care Bears Trade Dress with Plaintiffs.

77.     Defendants' conduct in the continuous promotion, advertisement, distribution and sale of the plush toy bears bearing the Infringing Trade Dress constitute dilution of the Care

18

Bears Trade Dress in that such conduct has diluted the distinctive quality of the Care Bears Trade Dress by diminishing Plaintiffs' ability to identify and distinguish its products.

78.     Upon information and belief, Defendants' actions were done and continue to be done willfully with an intent to exploit Plaintiffs' reputation and dilute Plaintiffs' Care Bears Trade Dress.

79.     Plaintiffs have no adequate remedy at law.  The conduct of Defendants described herein has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs in the Care Bears Trade Dress and to the business, reputation and goodwill of Plaintiffs.

## COUNT V
## Unfair Competition Under Ohio Common Law

80.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs, as if set forth fully herein.

81.     This claim arises under the common law of the State of Ohio.

82.     Defendants' intentional and willful acts as alleged above were committed in bad faith with the intent to cause, and have caused, confusion and mistake--deceiving purchasers as to the source of origin or sponsorship of Defendants' goods in that the public is likely to believe that Defendants' Infringing Care Bears emanate from, are sponsored or licensed by, or are in some other way connected and/or associated with Plaintiffs, in violation of Ohio common law.

83.     Plaintiffs have no adequate remedy at law.  As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues and profits, and will continue to do so unless and until Defendants are preliminarily and permanently restrained and enjoined by the Court from further violating Plaintiffs' rights.

19

## COUNT VI

### Dilution in Violation of Ohio Common Law

84.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs, as if set forth fully herein.

85.     This claim arises under the common law of the State of Ohio.

86.     Defendants' intentional and willful acts as alleged above constitute dilution of the Care Bears Trade Dress, in violation of Ohio common law, in that such conduct has diluted the distinctive quality of the Care Bears Trade Dress by diminishing Plaintiffs' ability to identify and distinguish its products.  Further, Defendants' use of the Infringing Trade Dress has corroded Plaintiffs' interest in the Care Bears Trade Dress by damaging positive associations that Plaintiffs have established in the Care Bears Trade Dress.

87.     Plaintiffs have no adequate remedy at law.  As a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill, and will sustain serious loss of revenues and profits, and will continue to do so unless and until Defendants are preliminarily and permanently restrained and enjoined by the Court from further violating Plaintiffs' rights.

## COUNT VII

### Unfair and Deceptive Trade Practices
### in Violation of the Ohio Consumer Sales Practices Act

88.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs, as if set forth fully herein.

89.     This claim arises under the Ohio Consumer Sales Practices Act ("O.C.S.P.A."), Ohio Revised Code § 1345.01 et seq., and the common law of the State interpreting that statute.

20

90.     Defendants are "sellers" under the O.C.S.P.A. Defendants' aforementioned unauthorized activities: (i) constitute unfair and deceptive practices in connection with consumer transactions; (ii) have damage Plaintiffs' business and reputation; and (iii) are likely to cause confusion and mistake in the minds of the public as to the source and/or affiliation of the goods provided, all in violation of the O.C.S.P.A.

91.     Upon information and belief, Defendants' actions were done: (i) willfully with full knowledge of the enviable reputation and goodwill Plaintiffs have developed in the Care Bears Trade Dress and the Care Bears Copyrighted Material; (ii) with the express intent to trade on the value and goodwill established in the Care Bears Trade Dress and the Care Bears Copyrighted Material; (iii) in order to cause confusion, and to mislead and deceive the purchasing public, by implying that Defendants' Infringing Care Bears have sponsorship, approval, performance characteristics, and/or benefits that they do not have; and (iv) in order to cause confusion, and to mislead and deceive the purchasing public, by implying that Defendants themselves have a sponsorship, approval, or affiliation that they do not have.

92.     Plaintiffs have no adequate remedy at law. The conduct of Defendants has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs in their businesses, reputations, and goodwill.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ask this Court to:

1.     Grant a preliminary injunction and thereafter a permanent injunction restraining and enjoining Defendants and any and all principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns of Defendants, and all those in privity, concert or participation with Defendants and all those who receive actual notice of this

21

order, from:

    (i)     directly or indirectly infringing the Care Bears Copyrighted Material and the Care Bears Trade Dress (collectively the "Care Bears Intellectual Property"), in any manner, including generally, but not limited to manufacturing, distributing, advertising, selling, and/or offering for sale and distribution any merchandise which infringes the Plaintiffs' Care Bears Intellectual Property, and specifically;

    a.     using the Care Bears Trade Dress or any trade dress confusingly similar thereto, or any reproduction, counterfeit, copy, or colorable imitation of said trade dress in connection with the manufacture, distribution, advertising, sale, offering for sale, and/or other use of the merchandise pictured in Exhibit D hereto;

    b.     applying said trade dress or any such reproduction, counterfeit, copy, or colorable imitation to any label, sign, print, package, wrapper, receptacle, or advertisement used in connection with the manufacture, distribution, sale, and/or offering for sale, of said products or services;

    c.     manufacturing, distributing, selling, and/or offering for sale, said products and services or any other unauthorized products, which picture, reproduce, or utilize the likeness of or which copy or bear a substantial similarity to any of the Care Bears Copyrighted Material; or

    d.     manufacturing, distributing, selling, or offering for sale or in connection thereto any unauthorized promotional materials, labels,

packaging or containers which picture, reproduce or utilize the likenesses of, or which bear substantial similarity to, any of the Care Bears Copyrighted Material;

(ii)     using any trademark, trade name, trade dress, logo or design that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, Defendants' customers, or members of the public that unauthorized merchandise manufactured, distributed, advertised, sold and/or offered for sale by Defendants originate from Plaintiffs, or that said merchandise has been sponsored, approved, or licensed by or associated with Plaintiffs or is in some way connected or affiliated with Plaintiffs;

(iii)    engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, Defendants' customers, and/or members of the public to believe that the actions of Defendants or Defendants themselves are sponsored, approved, or licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs;

(iv)     affixing, applying, annexing or using in connection with the manufacture, distribution, advertising, sale, and/or offering for sale or other use of any goods or services, a false description or representation, including words or other symbols, ending to falsely describe or represent such goods as being those of either Plaintiff;

(v)     otherwise competing unfairly with Plaintiffs in an manner;

(vi)     diluting or causing injury to Plaintiffs' business reputation and to the distinctiveness of the Care Bears Trade Dress or any of Plaintiffs' plush toys by

unauthorized use of the same;

(vii)    destroying or otherwise disposing of any of the hereinabove mentioned

products, or any documents pertaining to them or their acquisition or to any sales

or transfer thereof heretofore made; and

(viii)   assisting, aiding or abetting another person or business entity in engaging

or performing any of the activities enumerated in subparagraphs (i) through (vii)

above.

2.       Find that Defendants have infringed Plaintiffs' Care Bears Copyrighted

Material in violation of federal law by the acts complained of herein.

3.       Find that Defendants have infringed Plaintiffs' Care Bears Trade Dress

and competed unfairly in violation of federal law by the acts complained of herein.

4.       Find that Defendants have utilized false designations of origin and/or false

descriptions in violation of federal law by the acts complained of herein.

5.       Find that Defendants have diluted Plaintiffs' Care Bears Trade Dress in

violation of federal law by the acts complained of herein.

6.       Find that Defendants have competed unfairly in violation of Ohio common

law by the acts complained of herein.

7.       Find that Defendants have diluted Plaintiffs' Care Bears Trade Dress in

violation of Ohio common law by the acts complained of herein.

8.       Find that Defendants have committed unfair and deceptive practices in

violation of Ohio statutory law by the acts complained of herein.

9.       Issue an order requiring Defendants and any and all principals, officers,

agents, servants, employees, attorneys, successors, and assigns, and all those in active privity or

24

concert with Defendants who receive actual notice of said order, to deliver to Plaintiffs for destruction all infringing merchandise in their possession or under their control which bears unauthorized simulations, copies or colorable imitations of the Care Bears Intellectual Property.

10.     Issue an order requiring recall of any infringing merchandise sold and requiring Defendants to issue written notices to all those previously offered the infringing merchandise and those to whom the infringing merchandise has been sold notifying them of the injunction.

11.     Require Defendants to disseminate corrective advertising, at Defendants' expense and upon Plaintiffs' approval, that informs consumers, the trade and the public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and/or require Defendants to pay Plaintiffs' costs in producing and disseminating such corrective advertising.

12.     Direct Defendants to file with this Court and serve on counsel for Plaintiffs, within thirty (30) days after entry of the Injunction, a written report under oath setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs.

13.     Award Plaintiffs monetary relief in an amount to be fixed by the Court in its discretion as just, including all damages sustained by Plaintiffs, and/or all of Defendants' profits or gains of any kind resulting from their willful infringement, said amount to be trebled, and exemplary damages in view of the intentional nature of the acts complained of herein pursuant to 15 U.S.C. § 1117.

14.     In the event Plaintiffs elect statutory damages in lieu of actual damages pursuant to the Copyright Law, order Defendants to pay such statutory damages as to the Court shall appear just, as specified in 17 U.S.C. § 504(c)(1), for Defendants' acts of copyright

infringement.

15. Award to Plaintiffs their attorneys' fees and costs and expenses of litigation pursuant to 17 U.S.C. § 505 and O.R.C. § 1345.09(F)(2).

16. Award to Plaintiffs their attorneys' fees, due to the exceptional nature of this case, and all of Plaintiffs' costs and expenses of litigation, pursuant to 15 U.S.C. § 1117(a).

17. Order an accounting and render judgment against Defendants for all profits wrongfully derived by Defendants by reason of their copyright infringement, false designation of origin, trade dress infringement, unfair competition, and dilution.

18. Award all damages adequate to compensate Plaintiffs for Defendants' acts of copyright infringement, false designation of origin, trade dress infringement, unfair competition, and dilution.

19. Require Defendants to pay Plaintiffs prejudgment and post-judgment interest at the applicable rates on all amounts awarded.

20. Grant to Plaintiffs such other and further relief as the Court may deem just, proper and equitable under the circumstances.

Dated:  August 19, 2003

_aunanShilav_
Bruce O. Baumgartner (0025701)
Deborah A. Wilcox (0038770)
Eric J. Steiner (0072725)
Timothy A. Lemper (0074790)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH  44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

Attorneys for Plaintiffs

G:\CLdata\Ejs5052\83149\Dollar General\Complaint v 10.doc

27